**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| UNITED BANK<br>2071 Chain Bridge Rd,<br>Vienna, VA 22182<br><br>    *Plaintiff,*<br><br>v.<br><br>LOUDOUN MITIGATION BANK, LLC<br>12022 Meadowville Court<br>Herndon, VA 20170<br><br>And<br><br>U.S. ARMY CORPS OF ENGINEERS,<br>NORFOLK DISTRICT<br>803 Front Street<br>Norfolk, VA 23510<br><br>and<br><br>ENVIRONMENTAL PROTECTION<br>AGENCY, REGION 3<br>1650 Arch Street<br>Philadelphia, PA 19103<br><br>and<br><br>U.S. FISH AND WILDLIFE SERVICE<br>6669 Short Lane<br>Gloucester, VA 23061<br><br>and<br><br>VIRGINIA DEPARTMENT OF<br>ENVIRONMENTAL QUALITY<br>1105 East Main Street, Suite 1400<br>Richmond, VA 23230<br><br>and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____ |

| | |
|---|---|
| VIRGINIA DEPARTMENT OF GAME | ) |
| AND INLAND FISHERIES a/k/a | ) |
| VIRGINIA DEPARTMENT OF WILDLIFE | ) |
| RESOURCES | ) |
| 7870 Villa Park Drive, Suite 400 | ) |
| Henrico, VA 23228 | ) |
| | ) |
| and | ) |
| | ) |
| VIRGINIA MARINE RESOURCES | ) |
| COMMISSION | ) |
| 380 Fenwick Road | ) |
| Ft. Monroe, VA 23651 | ) |
| | ) |
| and | ) |
| | ) |
| VIRGINIA INSTITUTE OF MARINE | ) |
| SCIENCES | ) |
| 1370 Greate Road | ) |
| Gloucester Point, VA 23062 | ) |
| | ) |
| and | ) |
| | ) |
| | ) |
| BRIEL, P.C. | ) |
| 17809 Airmont Road | ) |
| Round Hill, VA 20141 | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## **COMPLAINT**

Plaintiff, United Bank, by its undersigned attorneys, hereby files this Complaint against Defendants, Loudoun Mitigation Bank, LLC ("Bank Sponsor"), the U.S. Army Corps Of Engineers, Norfolk District ("USACE"), the Environmental Protection Agency ("EPA"), the U.S. Fish And Wildlife Service ("USFWS"), the Virginia Department Of Environmental Quality ("DEQ"), the Virginia Department Of Game and Inland Fisheries ("VDGIF"), the Virginia Marine Resources Commission ("VMRC"), the Virginia Institute Of Marine Sciences ("VIMS"), and Briel, P.C. ("Briel"), and for its cause of action, states as follows:

### Summary of the Action

1.      This is an action for a declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 pertaining to certain funds being held in an escrow account in connection with a mitigation bank.

2.      A mitigation bank is an environmentally sensitive area, identified as an area that can be preserved, enhanced, created or restored by environmental restoration work.

3.      The Bank Sponsor is responsible for performing mitigation work at two separate mitigation banks commonly referred to as the "Daley Site" and the "Pipken Site."

4.       In connection with its obligations, the Bank Sponsor was required to maintain escrow accounts to secure completion of its obligations in connection with the mitigation banks. Defendant Briel is the escrow agent and maintains escrow accounts with United Bank for each separate mitigation bank.

5.      Pursuant to a settlement agreement approved by an order of the United States Bankruptcy Court for the Eastern District of Virginia, funds on deposit in the escrow accounts are to be remitted to United Bank once the funds are no longer needed to secure the Bank Sponsor's obligations.

6.      The Daley Site has been terminated and thus the funds on deposit in the Daley Site escrow accounts are no longer needed to secure performance of the Bank Sponsor's obligations at the Daley Site. United Bank made demand upon Briel to tender the escrowed funds for the Daley Site to United Bank, but Briel refused to do so because, among other reasons, the USACE asserts that the funds should be transferred to the escrow accounts maintained for the benefit of the Pipken Site. USACE's insistence on the transfer of the escrow funds for the Daley Site in the face of United Bank's interest in those funds finds no support in applicable law.

3

7.      Accordingly, United Bank files this action seeking a declaration that, among other things, the funds on deposit in the escrow accounts maintained in connection with the Daley Site are immediately payable to United Bank.

### Jurisdiction and Venue

8.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

9.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. As is more particularly described herein, a determination that United Bank is entitled to the disputed funds will require the Court to adjudicate whether USACE has authority under various federal laws and regulations to require that funds maintained in escrow for the benefit of one mitigation bank be transferred to an escrow account maintained for the benefit of another mitigation bank.

10.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in this Court because this Court is located in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of this action is situated.

### Parties

11.     Plaintiff, United Bank, is a banking corporation organized under the laws of the Commonwealth of Virginia.

12.     Defendant, Briel, is a professional corporation organized and existing under the laws of the Commonwealth of Virginia.

13.     Defendant, Loudoun Mitigation Bank, LLC, is a limited liability company organized under the laws of the Commonwealth of Virginia.

14.     Defendant, USACE, is a department of the United States Army.

15.    Defendant, EPA, is an agency of the government of the United States.

16.    Defendant, USFWS, is an agency of the government of the United States, within the United States Department of the Interior.

17.    Defendant, DEQ, is an agency of the government of the Commonwealth of Virginia.

18.    Defendant, VDGIF, is an agency of the government of the Commonwealth of Virginia.

19.    Defendant, VMRC, is an agency of the government of the Commonwealth of Virginia.

20.    Defendant, VIMS, is a commission created pursuant to the laws of the Commonwealth of Virginia under VA Code Ann. § 28.2-100 *et seq*.

21.    Defendants, USACE, EPA, USFWS, DEQ, VDGIF, VMRC, and VIMS are collectively referred to herein as the "MBRT Defendants."

<u>**Facts**</u>

***Mitigation Banks***

22.    The funds at issue in this declaratory judgment action are escrow funds being maintained in connection with a mitigation bank that was established pursuant to Sections 401 and 404 of the Clean Water Act, Section 10 of the Rivers and Harbors Act, and Section 62.1-44.15:5 of the Code of Virginia.

23.    A mitigation bank is an environmentally sensitive area, identified as an area that can be preserved, enhanced, created or restored by environmental restoration work.

24.     Pursuant to the above-referenced statutes and the corresponding federal and state regulations, mitigation bank review teams comprised of federal and state agencies are empowered to enter into agreements, called mitigation banking instruments, with a "bank sponsor."

25.     Bank sponsors are private companies that are responsible for the establishment and, usually, operation of a mitigation bank site.

26.     These "bank sponsors" are offered financial incentives to complete the mitigation efforts at a mitigation site.

***The Bank Sponsor's Mitigation Sites***

27.     Relevant to this matter, the Bank Sponsor served as a bank sponsor for two separate mitigation sites known as the Daley Bank Site ("Daley Site") and the Pipken Bank Site ("Pipken Site" and collectively with the Daley Site, the "Bank Sites") each located in Loudoun County, Virginia.

28.     For each of the Daley Site and the Pipken Site, the Bank Sponsor entered into a number of agreements, including an Umbrella Mitigation Banking Instrument and various Site Development Plans (collectively, the "Banking Instruments") with the USACE, the EPA, the USFWS, and the DEQ. These Banking Instruments set forth the Bank Sponsor's obligations and rights with respect to each of the Bank Sites.

29.     There is a single Umbrella Banking Instrument for both sites, and separate set of Site Development Plans for each of the Daley Site (the "Daley Site Instruments") and the Pipken Site (the "Pipken Site Instruments"). A true and accurate copy of the Umbrella Banking Instrument is attached hereto as Exhibit 1.

30.     The MBRT Defendants, USACE, EPA, USFWS, DEQ, VDGIF, VMRC and VIMS, comprise the mitigation bank review team pursuant to the terms of the Daley Site

Instruments. USACE is the chair of the mitigation bank review team for the Daley Site. The MBRT Defendants also comprise the mitigation bank review team for the Pipken Site under the Pipken Site Instruments.

31.     Pursuant to the terms of the Banking Instruments and applicable law, the MBRT Defendants, in their capacity as the mitigation bank review team for the Daley Site and the Pipken Site, were empowered to obtain security for the Bank Sponsor's obligations related to each of the Bank Sites by requiring that the Bank Sponsor provide some form of security for its performance, usually in the form of a bond or an escrow arrangement.

32.     Consistent with the foregoing, the MBRT Defendants, in their capacity as the mitigation bank review team for the Daley Site and the Pipken Site, required the Bank Sponsor to establish an escrow arrangement to secure its obligations in connection with both the Daley Site and the Pipken Site.

33.     To that end, the Bank Sponsor engaged Briel to serve as escrow agent for both Bank Sites.

34.     Briel established the following four (4) separate escrow accounts, in its capacity as escrow agent, with United Bank: (i) the Daley Bank Site Maintenance and Monitoring Fund Account with an account number ending in 1502; (ii) the Daley Bank Site Catastrophic Event and Long-Term Management Fund Account with an account number ending in 1510; (iii) the Pipken Bank Site Maintenance Monitoring Fund Account with an account number ending in 1529; and (iv) the Pipken Bank Site Catastrophic Event and Long Term Management Fund Account with an account number ending in 1537. The accounts referenced in (i) and (ii) above are referred to collectively herein as the "Daley Site Escrow Accounts" and the accounts identified in (iii) and (iv) above are referred to collectively as the "Pipken Site Escrow Accounts." The Daley Site

Escrow Accounts and the Pipken Site Escrow Accounts are currently located in the Commonwealth of Virginia at United Bank.

35.     Briel maintains the Pipken Site Escrow Accounts and the Daley Site Escrow Accounts (collectively, the "Escrow Accounts") pursuant to the terms and conditions of two separate escrow agreements ("Escrow Agreements") effectively dated November 12, 2009, by and between the Bank Sponsor and Briel. True and accurate copies of the Escrow Agreements are attached hereto as Exhibit 2 and 3.

36.     The amount on deposit in the Daley Site Escrow Accounts currently totals $226,597.44 (the "Daley Site Escrow Funds")

***United Bank's Entitlement to the Daley Site Escrow Funds***

37.     United Bank's predecessor in interest, the Business Bank, previously extended a commercial loan to Joseph L. Bane, Jr. (the "Loan").

38.     Mr. Bane defaulted under the terms and conditions of the various documents evidencing, securing or otherwise documenting the Loan, resulting in a judgment being entered in favor of the Business Bank and against Mr. Bane in the amount of $710,451.34, plus interest, cost and attorneys' fees ("Judgment").

39.     In connection with the Business Bank's efforts to enforce the Judgment, the Business Bank filed claims against, among others, FBJ Real Estate, LLC ("FBJ"), asserting that FBJ (an entity under Mr. Bane's control) was also liable for the Judgment amounts. FBJ thereafter filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court"), commencing Case No. 11-16606-RGM (the "Bankruptcy Case").

40.     In connection with the resolution of the above-described disputes (among others), the Business Bank, Mr. Bane, FBJ, the Bank Sponsor, Frederick C. Calhoun, Stacey Calhoun, James Bane, and Alba Financial Corporation entered into that certain Settlement Agreement and Mutual Release effectively dated as of January 13, 2012 ("Settlement Agreement"). A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit 4.

41.     The Settlement Agreement was approved by an order of the Bankruptcy Court entered at Docket Number 67 (the "Court Order"). A true and accurate copy of the Court Order is attached hereto as Exhibit 5.

42.     Pursuant to the terms of the Settlement Agreement, Mr. Bane and certain of the other parties to the Settlement Agreement agreed to pay the Judgment in full, but if payment was made to the Business Bank on or before January 2, 2014, then the payment amount would be reduced to $675,000 (the "Settlement Amount").

43.     To secure repayment of the Settlement Amount and the Judgment, the Bank Sponsor pledged as collateral to the Business Bank all of the funds on deposit in the Pipken Site Escrow Accounts and the Daley Site Accounts, subject, however, to the rights of USACE.

44.     United Bank is the successor-in-interest to the Business Bank and, as a result thereof, United Bank is the current owner and holder of (a) the Judgment, (b) all rights, remedies and recourse of Business Bank under the Judgment, the Settlement Agreement and related court order, (c) the Bank Sponsor's pledge of the Escrow Accounts and all funds on deposit therein to the Business Bank, and (d) all rights, remedies and recourse of Business Bank with respect to the Escrow Accounts and all funds on deposit therein.

45.     Neither the Settlement Amount nor the amounts owed under the Judgment were ever paid to Business Bank. Furthermore, as of the date of the filing of this Complaint, the

Settlement Amount and the amounts owed under the Judgment have not been paid to United Bank and remain due and payable to United Bank.

***Existence of an Actual Controversy***

46.     There is an actual controversy pertaining to the Daley Site Escrow Funds.

47.     As set forth above, neither the Settlement Amount nor the amounts owed under the Judgment were ever paid to Business Bank. Furthermore, as of the date of the filing of this Complaint, the Settlement Amount and the amounts owed under the Judgment have not been paid to United Bank and remain due and payable to United Bank. As a result of the foregoing, the Daley Site Escrow Funds are payable to United Bank; subject to the rights of USACE.

48.     USACE no longer has any interest in the Daley Site Escrow Funds.

49.     The Daley Site Escrow Funds were posted to secure the Bank Sponsor's obligations in connection with the Daley Site. The Daley Site has been terminated, however, and therefore USACE no longer has any right, title or interest in and to the Daley Site Escrow Funds.

50.     Because USACE's interest in the Daley Site Escrow Funds has terminated, and because neither Settlement Amount nor the amounts owed under the Judgment were paid to Business Bank or United Bank, United Bank made demand upon Briel to tender the Daley Site Escrow Funds to United Bank. A copy of a demand letter sent by United Bank's counsel to Briel demanding remittance of the Daley Site Escrow Funds to United Bank is attached hereto as Exhibit 6.

51.     The USACE, on behalf of itself and the other members of the MBRT Team, has disputed United Bank's entitlement to the Daley Site Escrow Funds, however. The USACE instead insists that the Daley Site Escrow Funds must be transferred to the Pipken Site Escrow Accounts.

52.     There is no authority under the Escrow Agreements, the Banking Instruments, or applicable federal or state law governing mitigation banks to order the transfer of funds from an escrow account maintained for one mitigation bank to an escrow account maintained for another mitigation bank.

53.     When the USACE insisted that the Daley Site Escrow Funds be transferred to the Pipken Site Escrow Accounts, United Bank requested that the USACE advise United Bank of the legal basis for such request.

54.     In response, the USACE cited the following federal regulations:  73 Fed. Reg. 19607 (April 10, 2008) and 33 C.F.R. 332.7. *See* Letter from USACE to counsel for United Bank dated November 12, 2021, a copy of which is attached hereto as Exhibit 7. Neither regulation, however, supports USACE's position as neither has anything to do with a transfer of escrow funds between accounts for difference mitigation banks.

55.     By demanding that the Daley Site Escrow Funds be transferred to the Pipken Site Escrow Accounts, the USACE has effectively conceded that the funds are no longer needed to serve their intended purpose (i.e., securing completion of the mitigation efforts at the Daley Site).

56.     Because of the dispute between United Bank and the USACE with respect to the Daley Site Escrow Funds, Briel has refused to turn over the Daley Site Escrow Funds to either party.

**COUNT I**
**(Declaratory Judgment)**

57.     Plaintiff realleges and incorporates all allegations and other statements set forth in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.     An actual controversy exists as to the Daley Site Escrow Funds.

59.     By virtue of the Settlement Agreement and the Court Order, United Bank is entitled to receive immediate payment of the Daley Site Escrow Funds.

60.     But, USACE, acting on behalf of itself and the other MBRT Defendants, asserts that it is entitled to have the Daley Site Escrow Funds transferred to the Pipken Site Escrow Accounts to secure the Bank Sponsor's obligations related to the Pipken Site.

61.     Likewise Briel, the party in possession of the Daley Site Escrow Funds, has refused to turn the Daley Site Escrow Funds over to either party as a result of the competing claims to the funds.

62.     Given the competing claims to the Daley Site Escrow Funds, and given further that resolution of these  competing claims will turn, in part, on an adjudication of the application and interpretation of federal law governing mitigation banks, an actual controversy under federal law exists as to the entitlement of the Daley Site Escrow Funds.

WHEREFORE, Plaintiff, United Bank requests that this Court:

A.     Declare that:

1.  United Bank holds a security interest in and to the Daley Site Escrow Accounts and the Daley Site Escrow Funds and further that, pursuant to the terms of the Settlement Agreement and the Court Order, the Daley Site Escrow Funds are immediately payable to United Bank upon termination of USACE's interest in such funds;

2.  Any right, title and interest of the USACE and the other MBRT Defendants in the Daley Site Escrow Funds has been terminated;

3. There is no authority under the Banking Instruments, Escrow Agreements, applicable federal or state law, or otherwise for USACE to order the transfer of the Daley Site Escrow Funds to the Pipken Site Escrow Accounts; and

4. The Daley Site Escrow Funds are immediately payable to United Bank and should be immediately paid by Briel to United Bank.

B. Grant United Bank such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Michael G. Gallerizzo*
Michael G. Gallerizzo (VA Bar No. 39567)
James T. Heidelbach (VA Bar No. 93002)
Richard A. DuBose, III (VA Bar No. 91705)
Gebhardt & Smith LLP
1 South Street, Suite 2200
Baltimore, Maryland 21202
Tel: (410) 385-5046
mgal@gebsmith.com

*Counsel for the Plaintiff, United Bank*